UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELENE MARIE LEE, | Case No.: 1:20-cv-00700-SKO |
| Plaintiff, | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

On May 15, 2020, Plaintiff Helene Marie Lee ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

/////

/////

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted as Defendant in this suit.
[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 33, 35.)

1

## II.     BACKGROUND

On September 1, 2015, Plaintiff filed applications for DIB and SSI under Titles II and XVI of the Act, alleging she became disabled on September 27, 2012. (Administrative Record ("AR") 44, 171, 344-60.) She alleges she became disabled due to a combination of physical and mental impairments, including borderline intellectual functioning, anxiety disorder, depressive disorder, obesity, and joint dysfunction of the right knee. (AR 47.) Plaintiff was born on June 17, 1975, and was 37 years old as of the alleged onset date. (AR 353.) Plaintiff completed high school and attended college for a year, and she worked as a clerk from 2005 to 2010 and as a cook/cashier from 1995 to 2004. (AR 213.)

### A.     Relevant Medical Evidence[3]

#### 1.     Gary Farber, MD

Plaintiff presented to Dr. Gary Farber on February 11, 2013, for psychiatric evaluation with complaints of depression, anxiety, panic attacks, irritability and insomnia. (AR 556.) Dr. Farber noted that Plaintiff presented as distractable, her concentration was impaired, she had decreased sustained attention, and her short-term memory was moderately impaired. (AR 556.) Her mental status in all other respects was normal or unremarkable. (AR 556.) Dr. Farber prescribed Lexapro, Wellbutrin, Benadryl and Xanax. (AR 557.)

Plaintiff treated with Dr. Farber through October 4, 2016. (AR 516-555, 720-61.) Plaintiff was assessed with moderate, recurrent, major depressive disorder, panic disorder without agoraphobia and/or agoraphobia without panic disorder. (AR 518, 520, 522, 524, 526, 528, 530, 532, 534, 536, 538, 540, 544, 546, 548, 724, 730, 736, 742, 748, 754, 760.) Plaintiff indicated that the medication improved some of her symptoms. (AR 516, 518, 520, 522, 534, 538, 540, 542, 544, 546, 548, 550, 552, 554, 760.) Over the course of treatment, Plaintiff continued to complain of being tired in the afternoon, suffering from depression, having generalized anxiety, and suffering frequent panic attacks. (AR 516, 518, 520, 522, 524, 526, 528, 530, 532, 534, 536, 538, 540, 542, 544, 546, 548, 550, 552,

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

554, 724, 730, 748, 754, 760.) The panic attacks were functionally impairing, and accompanied by avoidance and phobias. (AR 516, 518, 520, 522, 526, 528, 530, 532, 534, 536, 538, 540, 542, 544, 546, 548, 550, 552, 554, 760.) Dr. Farber's findings on Plaintiff's mental status remained the same from February 11, 2013, until April 22, 2016: Plaintiff was depressed; distractable; displayed decreased sustained attention; evidenced impaired concentration; and evidenced moderately impaired short-term memory. (AR 516, 518, 520, 522, 526, 528, 530, 532, 534, 536, 538, 540, 542, 544, 546, 548, 550, 552, 554.) In all other respects, the mental diagnoses were normal or unremarkable: normal behavior; good grooming and hygiene; good eye contact; no abnormal behaviors; normal psychomotor activity; normal speech; normal thought process; normal thought content; no suicidal or homicidal ideations; no auditory or visual hallucinations or paranoia; normal affect; fair insight and judgment; alert and oriented; normal long-term memory; and intact higher cognitive function or reasoning and logic, goal directedness, planning and executive functioning. (AR 516, 518, 520, 522, 526, 528, 530, 532, 534, 536, 538, 540, 542, 544, 546, 548, 550, 552, 554, 724, 730, 736, 742, 748, 754, 760.)

From April 22, 2016, through October 4, 2016, however, Dr. Farber no longer noted complaints of panic attacks. (AR 724, 730, 736, 742, 748, 754.) Dr. Farber also no longer made findings that Plaintiff was depressed, distractable, displayed decreased sustained attention, evidenced impaired concentration, or evidenced moderately impaired short-term memory. (AR 724, 730, 736, 742, 748, 754.) In all respects, the mental diagnoses were normal or unremarkable: normal behavior; good grooming and hygiene; good eye contact; no abnormal behaviors; normal psychomotor activity; normal speech; normal thought process; normal thought content; no suicidal or homicidal ideations; no auditory or visual hallucinations or paranoia; normal affect; fair insight and judgment; and, alert and oriented. (AR 724, 730, 736, 742, 748, 754, 760.) Dr. Farber prescribed the same medications throughout his care: Lexapro, Benadryl, Xanax, and Wellbutrin. (AR 517, 519, 521, 523, 525, 527, 529, 531, 533, 535, 537, 539, 541, 543, 545, 547, 549, 551, 553, 555, 725, 731, 737, 743, 749, 755, 761.)

### 2. Ernest De Guzman, Psy.D.

On January 3, 2017, Plaintiff presented to Dr. De Guzman for follow-up of her medication treatment and progress evaluation. (AR 707.) Plaintiff complained of anxiety and intermittent panic

3

around her daily interactions. (AR 707.) Dr. De Guzman recommended that Plaintiff consider restarting therapy. (AR 707.) Dr. De Guzman assessed Plaintiff as suffering from recurrent, major depressive disorder and agoraphobia without panic disorder. (AR 707.) Plaintiff was continued on her medications but her Xanax prescription was increased. (AR 707-08.)

### 3. Marites del Rosario, M.D.

On January 21, 2018, Dr. del Rosario completed a mental medical source statement questionnaire with respect to care provided every one to two months from April 24, 2017, to January 21, 2018. (AR 802-07.) Dr. del Rosario found Plaintiff to be severely impaired by her symptoms of depression, cognitive dysfunction, lack of energy and motivation, and occasional panic attacks. (AR 802.) Dr. del Rosario indicated Plaintiff's mental abilities and aptitudes needed to do unskilled work ranged from "limited but satisfactory" to "unable to meet competitive standards." (AR 804-05.) Dr. del Rosario explained: "The patient will have significant difficulty keeping up with a schedule due to her excessive need for sleep and fatigability. Her ability to pay attention is very short for the same reason. Ability to keep up at a consistent pace is also poor." (AR 804.) Dr. del Rosario found Plaintiff had marked limitations in activities of daily living, social functioning, and concentration, persistence and pace. (AR 806.) Dr. del Rosario concluded that Plaintiff would be unable to work in a competitive work setting 8 hours per day 5 days per week and would be expected to miss more than four days of work per month. (AR 806.)

### 4. State Agency Medical Consultants

On March 22, 2016, State agency medical consultant D. Funkenstein, M.D., reviewed Plaintiff's medical records at the initial consideration level for a mental residual functional capacity assessment. (AR 204-06.) Dr. Funkenstein determined that Plaintiff's mental functioning ranged from not significantly limited to moderately limited. (AR 204-06.)

On May 30, 2017, State agency medical consultant Heather M. Abrahimi, Psy.D., reviewed Plaintiff's medical records at the reconsideration level. (AR 235-37.) Dr. Abrahimi also determined that Plaintiff's mental functioning ranged from not significantly limited to moderately limited. (AR 235-37.) Dr. Abrahimi further found that Plaintiff was capable of understanding, remembering and sustaining concentration, pace and persistence for simple routines throughout a normal

workday/workweek, that Plaintiff was able to accept routine supervision and interact with co-workers in a non-collaborative and superficial basis, that Plaintiff was capable of brief and infrequent public contact, and that Plaintiff was capable of adapting to a routine and predictable work environment, recognizing typical hazards, traveling to routine locations, and setting goals independently within the framework noted above. (AR 236-37.)

### B. Administrative Proceedings

The Commissioner initially denied Plaintiff's application for DIB on March 29, 2016. (AR 222.) Plaintiff's application was denied again on reconsideration on June 1, 2017. (AR 239.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). At a hearing held on March 21, 2019, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 139-72.) On April 24, 2019, the ALJ determined that Plaintiff was not disabled from December 27, 2012, through the date of the decision. (AR 56.)

### C. The ALJ's Decision

#### 1. Legal Framework

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three

and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] ... to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." Burch, 400 F.3d at 679 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." Id. (citing Swenson, 876 F.2d at 687).

### 2.   ALJ Decision

In a decision dated April 24, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act, in that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 55-56.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 46-57.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 27, 2012, the alleged onset date (step one). (AR 46.) At step two, the ALJ found Plaintiff's following impairments to be severe: "borderline intellectual functioning, anxiety disorder, depressive disorder, obesity, and joint dysfunction of the right knee." (AR 47.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 47.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. See 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffold; crawl; crouch; or kneel. She can occasionally climb ramps and stairs, stoop, and balance on even surfaces. She cannot work at unprotected heights or around hazardous moving machinery. She can work in a moderate noise level as defined in the Dictionary of Occupational Titles. She is capable of understanding; remembering; and sustaining concentration, pace, and persistence for

>simple, routine, and repetitive unskilled work throughout a normal workday and workweek. She can carry out detailed but uninvolved instructions. She is able to accept routine supervision and interact with co-workers in a non-collaborative environment and occasional basis. She is capable of brief and infrequent public contact. She is capable of adapting to a routine and predictable work environment, recognizing typical hazards, traveling to routine locations, and setting goals independently within the framework above.

(AR 50.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the symptoms of the nature alleged by the claimant; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 51.)

At step 4, the ALJ determined that Plaintiff was capable of performing the requirements of representative occupations such as Retail Marker (DOT 209.587-034), Inserting Machine Operator (DOT 208.685-018), and Small Parts Assembler (DOT 706.684-022). (AR 56.) Ultimately, the ALJ concluded that Plaintiff was not disabled because Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (step 5). (AR 56.)

Plaintiff subsequently sought review of the ALJ's decision before the Appeals Council, which denied review on March 23, 2020. (AR 1-7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III.   LEGAL STANDARD

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." Tidwell v.

Apfel, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.   DISCUSSION**

Plaintiff contends that the ALJ erred by: 1) failing to give adequate weight to the opinion of treating psychiatrist, Dr. Marites del Rosario; 2) giving weight to State agency psychologist, Dr. D. Funkenstein; and 3) improperly deviating from the opinion of Dr. Heather M. Abrahimi.  Plaintiff further contends that the Commissioner of Social Security holds his office on a constitutionally illicit basis, and therefore, the Administrative Law Judge lacks authority to act on the claim.

A.     Medical Opinions

1,     Legal Standard

The ALJ must consider and evaluate every medical opinion of record. See 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); Mora v. Berryhill, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." Mora, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). Fatheree v. Colvin, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); see also Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

"If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); cf. Reddick, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)).  "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" Orn, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." Id. at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)-(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." Reddick, 157 F.3d at 725 (quoting Lester, 81 F.3d at 830). See also Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); see, e.g., Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009))); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995))); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." Reddick, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. (citing Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988)).

2. The ALJ Properly Discounted the Opinion of Dr. Marites del Rosario

Plaintiff alleges, and the record reflects, that Dr. del Rosario was Plaintiff's treating psychiatrist from April 24, 2017, to January 21, 2018. (AR 802-07.) As previously noted, on January 21, 2018, Dr. del Rosario completed a mental medical source statement questionnaire. (AR 802-07.) Dr. del Rosario found Plaintiff to be severely impaired by her symptoms of depression, cognitive dysfunction, lack of energy and motivation, and occasional panic attacks. (AR 802.) With respect to work, Dr. del Rosario determined: "The patient will have significant difficulty keeping up with a schedule due to her excessive need for sleep and fatigability. Her ability to pay attention is very short for the same reason. Ability to keep up at a consistent pace is also poor." (AR 804.) Dr. del Rosario found Plaintiff had marked limitations in activities of daily living, social functioning, and concentration, persistence and pace, which led Dr. del Rosario to conclude that Plaintiff would be unable to work in a competitive work setting 8 hours per day 5 days per week and would be expected to miss more than four days of work per month. (AR 806.)

In weighing Dr. del Rosario's opinion, the ALJ stated:

> Marites P. del Rosario, M.D., opined that the claimant has difficulty functioning at home and would therefore have trouble working. Dr. del Rosario found the claimant's conditions cause excessive sleep, lack of motivation, decreased focus, difficulty remembering, social isolation, stress eating, and difficulty managing stress. Dr. del Rosario also noted the claimant was facing significant situational stress caused by a son with behavioral problems and an elderly mother. Dr. del Rosario indicated the claimant would be unable to meet competitive standards in attendance, performing on pace, and adjusting to normal work stress. She states the claimant will be unable to maintain socially appropriate behaviors. Dr. del Rosario indicated she has treated the claimant since April 2017 every 1-2 months. Dr. del Rosario's opinion is given no weight. Dr. del Rosario describes the conditions as mild, which is not consistent with the severity of the limitations she lists. On examination, Dr. del Rosario did note some abnormalities, but she made few and minor changes to the claimant's treatment over time. The degree of limitations described by Dr. del Rosario are also not consistent with the claimant's indication that she no longer needed therapy as of August 2015 and the lack of mental health records after January 2018.

(AR 54) (internal citations omitted).

Although not explicitly stated by the ALJ, portions of Dr. del Rosario's opinion were inconsistent with the opinions of the State agency physicians and her prior treating physician, Dr. Farber. Thus, the ALJ was required to articulate "specific and legitimate" reasons, supported by

substantial evidence, for rejecting Dr. del Rosario's opinion. Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198); see also Lester, 81 F.3d at 830.

The Court finds the ALJ offered "specific and legitimate" reasons for rejecting Dr. del Rosario's opinion. First, the ALJ noted that Dr. del Rosario, in her psychological evaluation dated April 24, 2017, diagnosed Plaintiff's condition as "mild." (AR 817.) This was inconsistent with her medical source statement which indicated "moderate to severe." (Compare AR 802-806 with 817.) Plaintiff claims the ALJ "cherry-picked" this finding, ignoring the rest of Dr. del Rosario's findings; however, Dr. del Rosario made few and minor changes to Plaintiff's treatment regimen in that time, despite her impairments allegedly progressing from mild to severe.

The ALJ also found that the severe limitations noted by Dr. del Rosario were inconsistent with the medical record, specifically, the opinions and diagnoses of the State agency doctors and Plaintiff's prior treating physician, Dr. Farber. (AR 52-54.) The ALJ noted that Petitioner's condition had improved during Dr. Farber's treatment to the point that Petitioner discontinued therapy in August of 2015 because she was no longer benefitting from it. (AR 52, 54.) In fact, on August 12, 2015, Plaintiff reported to Maria Holm, ASW, that she did "not have any treatment goals requested to work on. She reported being ok with her life and only coming to services for SSI documents and someone to talk to. Upon reviewing the client's progress, the client agreed she is doing okay." (AR 502.) From April 22, 2016, through October 4, 2016, Dr. Farber also noted that Plaintiff no longer complained of panic attacks (AR 724, 730, 736, 742, 748, 754.), and he no longer made findings that Plaintiff was depressed, distractable, displayed decreased sustained attention, evidenced impaired concentration, or evidenced moderately impaired short-term memory. (AR 724, 730, 736, 742, 748, 754.) An ALJ may properly discount a treating physician's opinion that is inconsistent with the medical record, including his own treatment notes and the notes of other physicians. See Valentine, 574 F.3d at 692–93.

The ALJ further gave no weight to Dr. del Rosario's opinion because it was apparent Plaintiff only sought treatment with Dr. del Rosario to obtain the disability statement. (AR 52.) Plaintiff sought treatment with Dr. del Rosario in April of 2017 and discontinued treatment as soon as she received the statement in January of 2018; she did not seek further treatment through the date of the ALJ's decision (April 2019). And as noted above, Plaintiff advised Maria Holm, ASW, that she was "only coming to

services for SSI documentation and someone to talk to." (AR 502.) Thus, the ALJ properly discounted Dr. del Rosario's opinion by considering the length and frequency of the treatment as well as the nature and extent of the relationship. 20 C.F.R. § 404.1527(c)(2)-(6).

### 3. The ALJ Properly Evaluated Dr. Funkenstein's Opinion

The ALJ gave "some weight" to the opinion of State agency psychologist Dr. D. Funkenstein. (AR 53.) Plaintiff contends that the ALJ should not have given his opinion any weight at all. Plaintiff contends Dr. Funkenstein's assessment provided no analysis or findings pertaining to Plaintiff's mental condition other than a conclusory statement that "[t]he MRFC is consistent with the ALJ denial. It does not necessarily represent an independent assessment. Chavez does apply for mental." (AR 206.) Plaintiff contends that the opinion applied the old regulations and was therefore only marginally relevant. Plaintiff also contends the ALJ may only give weight to an opinion to the extent it is adequately supported, and in this case, the opinion lacked any support in the record. Defendant counters that Dr. Funkenstein's opinion was supported by substantial evidence and consistent with the medical record.

Plaintiff's assertion that Dr. Funkenstein failed to provide any findings is inaccurate. Dr. Funkenstein evaluated the medical records and made findings concerning Plaintiff's mental functioning ranging from not significantly limited to moderately limited. (AR 204-206.) Dr. Funkenstein found that Plaintiff's mental health condition had not changed significantly since 2012. (AR 53, 206.) The ALJ noted that these findings were supported by and consistent with the entirety of the medical evidence. (AR 53.) The ALJ noted that: Plaintiff's behaviors on examination were normal; she rarely appeared tired; she displayed no psychomotor agitation; her thought process and content were normal; she retained the ability to perform simple tasks and had an average fund of knowledge with goal directed thoughts; she was able to be around supervisors, co-workers, and the public; she was able to shop in public; she was able to go places by herself and attend classes; and she was capable of caring for her elderly mother, her son, and her pet. (AR 51-53, citing 516, 518, 520, 526, 528, 530, 532, 534, 536, 538, 540, 542, 544, 546, 548, 550, 552, 554, 556, 661, 666, 674, 707, 718, 724, 730, 736, 742, 748, 754, 760, 777, 785, 789, 794, 811, 812, 813, 816.) The medical record demonstrated that Plaintiff was at most moderately limited in her mental abilities. As to Plaintiff's

claim that Dr. Funkenstein's opinion was formulated under the old regulations, the ALJ took this into account and properly discounted the opinion accordingly. Thus, the ALJ did not err in giving Dr. Funkenstein's opinion some weight.

####        4.       The ALJ properly accommodated Dr. Abrahimi's opinion

Plaintiff contends that the ALJ improperly deviated from the opinion of State agency psychologist Heather M. Abrahimi.  She notes that Dr. Abrahimi stated that Plaintiff "is able to accept routine supervision and interact with co-workers in a non-collaborative and *superficial* basis."  (AR 237) (emphasis added).  However, the ALJ provided a limitation to "interact with co-workers in a non-collaborative environment and *occasional* basis." (AR 50) (emphasis added).  Plaintiff claims the deviation was without explanation and contrary to law.

Shaibi v. Berryhill, 888 F.3d 1102 (9th Cir. 2017) is instructive in this case.  In Shaibi, Plaintiff similarly contended that the ALJ ignored the physician's opinion that the plaintiff was limited to superficial contact by finding that the plaintiff was limited to "occasional interaction with coworkers." Id. at 1107.  The Ninth Circuit found no inconsistency.  The Court noted in Shaibi that the "ALJ evidently contemplated that [the plaintiff's] social limitations were significant enough that he was incapable of frequent or sustained interactions with coworkers, but not sufficiently debilitating that [the plaintiff] could *never* interact with colleagues or supervisors." Id. at 1107.  The Ninth Circuit determined that the ALJ properly accommodated the physician's opinion by limiting Plaintiff's interaction with co-workers to occasional.  Id.  Here, as in Shaibi, Dr. Abrahimi stated Plaintiff *was able* to interact with co-workers on a superficial basis.  (AR 237.)  Thus, the ALJ properly accommodated the opinion of Dr. Abrahimi, along with the other opinions and the medical record, in formulating the RFC.

### B.      The ALJ Did Not Lack Authority

In her final argument, Plaintiff claims the ALJ did not have the authority to act on her claim because the Commissioner of Social Security holds his office on a constitutionally illicit basis. Plaintiff contends that ALJs have no valid legal authority to decide claims before them, and therefore, the matter should be remanded for a *de novo* hearing before a new ALJ.

Congress installed as the head of the Social Security Administration a single Commissioner of Social Security, who serves a term of six years. 42 U.S.C. § 902(a)(3). Congress provided that the President may remove the Commissioner during the six-year term only for "neglect of duty or malfeasance in office." Id. However, to ensure that the President retains full executive power, the Supreme Court has adhered to the general rule that the President possesses 'the authority to remove those who assist him in carrying out his duties.'" Seila Law LLC v. Consumer Fin. Prot. Bureau, ––– U.S. ––––, 140 S. Ct. 2183, 2198, 207 L.Ed.2d 494 (2020) (quoting Free Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 513–14, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010)). Because the removal provision limits the President's executive authority, it is unconstitutional. Plaintiff and Defendant agree on this, and the Ninth Circuit has so held. Kaufmann v. Kijakazi, 32 F.4th 843, 848 (9th Cir. 2022).

Plaintiff contends that the Commissioner of Social Security is thus serving on a constitutionally illicit basis. Plaintiff contends that because ALJs derive their authority from the Commissioner, their decisions are also constitutionally infirm, and therefore, their decisions must be set aside. Plaintiff's argument, however, has been rejected by the Ninth Circuit. In Kaufmann, the Ninth Circuit held that the removal provision is severable from the remainder of the statute. Kaufmann, 32 F.4th at 849.

Given that the provision is severable, the question is the appropriate remedy for Plaintiff. The Ninth Circuit noted that the Supreme Court in Collins held that "an unconstitutional removal provision does not affect the *authority* of the underlying agency officials to act." Kaufmann, 32 F.4th at 849 (citing Collins v. Yellen, ––– U.S. ––––, 141 S. Ct. 1761, 1787-88 & n.23, 210 L.Ed.2d 432 (2021)). Because the ALJ, members of the Appeals Council, and Acting Commissioner Berryhill all served under valid appointments, the Ninth Circuit determined that "'there is no reason to regard any of the actions taken by the [agency] as void.'" Kaufmann, 32 F.4th at 849 (quoting Collins, 141 S.Ct. at 1787).

The Ninth Circuit stated that "[a] party challenging an agency's past actions must show how the unconstitutional removal provision *actually harmed* the party - for example, if the President would have removed the agency's head but for the provision or, alternatively, if the agency's head 'might

have altered his behavior in a way that would have benefited' the party." Kaufmann, 32 F.4th at 849 (quoting Collins, 141 S.Ct. at 1789).  Here, as in Kaufmann, Plaintiff fails to provide any evidence or a plausible theory as to how the removal provision caused her any harm.  For example, Plaintiff does not show "that the President took an interest in her claim or that the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority." Kaufmann, 32 F.4th at 850.  Plaintiff has shown no link whatsoever between the removal provision and her case.  Because no actual harm to Plaintiff's case was caused by the removal provision, the ALJ's decision must be upheld.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff, Helene Marie Lee.

IT IS SO ORDERED.

Dated:   **September 6, 2022**                    /s/ *Sheila K. Oberto*
                                                 UNITED STATES MAGISTRATE JUDGE